# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:19-cv-00049-FDW

| | |
|---|---|
| MATTHEW JAMES GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU HOLLAR, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983. [Doc. 1]. See 28 U.S.C. §§ 1915(e)(2); 1915A. The Plaintiff is proceeding in forma pauperis. [Doc. 2, 7].

## I.  BACKGROUND

Pro se Plaintiff Matthew James Griffin ("Plaintiff") is currently a New Mexico state inmate of the Penitentiary of New Mexico located in Sante Fe, New Mexico. Plaintiff filed this action on April 30, 2019, pursuant to 42 U.S.C. § 1983. [Doc. 1]. Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the U.S. Constitution while Plaintiff was housed at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. Plaintiff also states claims for violation of the Americans with Disabilities Act ("ADA"), for retaliation in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), and a claim for negligence under the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, et seq. In his Complaint, Plaintiff names the following individuals as Defendants in this matter: (1) FNU Hollar, identified as a Sergeant at Alexander, (2) Marilyn Gamewell, identified as a Nurse Practitioner at Alexander; and (3) Does #1 through 20, identified

as correctional officers, a sergeant, an ADA Coordinator, and nurses at Alexander at all relevant times. [Doc. 1 at 3-4].

Plaintiff's allegations, which are taken as true for purposes of initial review, can be summarized as follows:

Plaintiff is a handicapped prisoner of the State of New Mexico. [Doc. 1 at ¶ 29]. Plaintiff has a serious visual impairment, which has been diagnosed by a medical doctor as "strabismus with large angle alternating exotropia." [Id. at ¶ 31]. This impairment causes Plaintiff to suffer double vision, uncontrolled eye movement (nystagmus), eye fatigue, and loss of all depth perception. [Id.]. Plaintiff's vision impairment substantially limits his ability to ambulate safely, read, work, drive, navigate uneven terrain, climb stairs, safely perform manual tasks involving eye-hand coordination, and to see and perceive his surroundings correctly. [Id. at ¶ 32]. Plaintiff is disabled within the meaning of the ADA and the Rehab Act. [Id. at ¶ 34].

On or about October 9, 2015, Plaintiff was transferred to the custody of the North Carolina Department of Public Safety (NCDPS). [Id. at ¶ 29]. In December 2015, the NCDPS began housing Plaintiff in an ADA compliant handicapped cell consistent with the instructions of NCDPS healthcare providers. [Id. at ¶ 35]. On March 26, 2018, Plaintiff was examined by ophthalmologist Dunan E. Berry, M.D., who recommended that Plaintiff be housed in a ground floor handicapped cell, be given a bottom bunk, and not have to use stairs. [Id. at ¶ 36]. Dr. Berry also wrote that Plaintiff would benefit from a night light. [Id.].

On June 12, 2018, Plaintiff was evaluated by Marta Kalinski, M.D., at Main Medical at Alexander with regard to Plaintiff's special needs. In the medical record, Dr. Kalinski wrote, "patient has elevated risk of falls or other type of accidental body injury." Dr. Kalinski, who is Plaintiff's primary care provider, also ordered, "[d]ue to vision impairment, patient needs to have

changes placed in Medical Duty Status including handicapped cell, no climbing, falls prevention, bottom bunk, no stairs, no work around hot or sharp objects, avoidance of uneven terrain, no driving." [Id. at ¶ 37].

On or about October 14, 2018, Defendant Gamewell, a nurse practitioner, deleted "night light" from Plaintiff's Medical Duty Status without notifying Plaintiff. Plaintiff's other limitations, restrictions and accommodations remained unchanged at this time. [Id. at ¶ 38]. On November 8, 2018, Defendant Hollar transferred Plaintiff from a handicapped cell with handrails and a functioning night light to a non-handicapped cell with an obstructed night light. [Id. at 42]. This transfer was from regular population to segregation. [Id. at ¶ 44]. On the same day, Plaintiff showed Defendant Hollar his June 13, 2018 and October 9, 2018 Medical Duty Status reports requiring a handicapped cell and falls prevention measures to which Defendant Hollar replied, "Tough shit." [Id. at ¶ 43]. At this time, there were at least two and up to four handicapped cells in segregation that were being used to house prisoners who were not handicapped. [Id. at ¶¶ 45-46].

On November 8 through 10, 2018, Plaintiff showed Doe Defendants 1 through 17[1] his Medical Duty Status and requested a handicapped cell with an unobstructed night light and handrails. [Id. at ¶¶ 47-52]. These Defendants all refused to transfer Plaintiff to a handicapped cell and Doe Defendants 12 through 17 also refused to contact the Alexander Officer-in-Charge (OIC), who had the authority to immediately transfer Plaintiff to a handicapped cell. [Id.]. As for

---

[1] In his Complaint, Plaintiff appears to identify Doe Defendants 1 through 11 by last name. Namely, in Paragraphs 47 through 51, Plaintiff alleges their last names as Massagee, Hensley, Walter, Williams, Delozier, Strohl, Maudeville, Copeland, Davis, Stevenson, and Lowery, respectively. [Doc. 1 at ¶¶ 47-51]. Given that it appears that Plaintiff knows the identify of these Defendants, it is unclear why plaintiff named them as Doe Defendants in the Complaint. Plaintiff must move to substitute the proper identities of these Doe Defendants if he wishes his claims against them to proceed. He shall identify Doe Defendant 1, for instance, as "FNU Massagee," and so on.

3

Doe Defendants 18 through 20, Plaintiff alleges these Defendants are Alexander officials "who will be identified through discovery and who authorized the housing of Plaintiff in a non-handicapped cell contrary to the medical order of Dr. Kalinski." [Id. at ¶¶ 53-55].

On November 11, 2018, at approximately 4 a.m., Plaintiff fell while in the non-handicapped cell, injuring his right foot, right knee, left hip, back, and right shoulder. [Id. at ¶ 56]. Plaintiff required medical attention and prescription medication. As of the time of filing his Complaint, Plaintiff alleged that his injuries remained "unresolved" and his medical care was "ongoing." [Id. at ¶ 57]. Plaintiff further alleges that each of the Defendants were aware of the risk to Plaintiff and of the medical orders to house Plaintiff in a handicapped cell, the "falls prevention" order, and the need for Plaintiff's cell to have handrails to prevent falling. [Id. at ¶¶ 60-62]. Despite being aware of the substantial risk of harm to Plaintiff, Defendants disregarded the risk of harm and contrary to medical orders, housed Plaintiff in a "non-handicapped cell without handrails that had an obstructed night light which caused Plaintiff to be injured in a fall at night." [Id. at ¶ 64].

Plaintiff seeks monetary and injunctive relief and the recovery of costs and fees, if any. [Id. at 23].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III. DISCUSSION**

Plaintiff asserts three claims in his Complaint: (1) deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's rights under the Eighth Amendment to the U.S. Constitution; (2) violation of the Americans with Disabilities Act ("ADA") and for retaliation in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"); and (3) negligence under the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, et seq.

**A. Eighth Amendment**

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

5

Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

"[T]o establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct." Ballenger v. Crawford, No. 3:15-cv-12558, 2016 WL 8710023, at *9 (S.D.W. Va. Aug. 5, 2016) (citing Miltier v. Beorn, 896 F.2d 848,

854 (4th Cir. 1990)).

The Court finds that, taking Plaintiff's allegations as true, and drawing all reasonable inferences in his favor, Plaintiff's claims against all Defendants for deliberate indifference to serious medical needs are not clearly frivolous. Thus, this claim survives initial review

### B. ADA and Rehab Act

Plaintiff also brings claims against Defendants for violation of his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973 by discriminating against him based on his disability, refusing to provide Plaintiff with reasonable accommodations, and retaliating against Plaintiff by refusing to transfer Plaintiff to a handicapped cell solely because Plaintiff is disabled and was complaining of not being provided reasonable accommodations under the ADA. [Doc. 1 at ¶¶ 78-84].

Taking Plaintiff's allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Court finds that the Plaintiff's allegations of ADA and Rehab Act violations against Defendants survive initial review. See Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998) (holding that the ADA applies to state prisons); Latson v. Clarke, 249 F.Supp.3d 838, 857 (W.D. Va. Apr. 20, 2017) (holding prisoner in § 1983 action sufficiently stated claims for ADA and Rehab Act violations).

### C. North Carolina Tort Claims Act

Plaintiff asserts a claim against the against all Defendants under the North Carolina Tort Claims Act ("the Act") based on alleged negligence of Defendants as employees of the NCDPS for the same conduct that forms the basis of Plaintiff's deliberate indifference claim. [Doc. 1 at ¶¶ 86-99].

This Court lacks jurisdiction to hear claims brought under the Act.

> Under the well-settled doctrine of sovereign immunity, a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit. Likewise, an agency of the state may only be sued when it has authorized such suits by statute. Statutes constituting such waiver under North Carolina law must be strictly construed.

Oliver v. Baity, 208 F.Supp.3d 681, 693-94 (4th Cir. 2016) (internal quotation marks and citations omitted). Here, the statute language specifically confers jurisdiction over claims brought under the Act on the North Carolina Industrial Commission. See N.C. Gen. Stat. § 143-291(a) ("The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against … agencies of the State."). This Act requires that plaintiffs "who wish to sue the state for tortious acts must bring their claims before the North Carolina Industrial Commission, not the district court." Alston v. N.C. A & T State Univ., 304 F.Supp.2d 774, 783 (M.D.N.C. Feb. 6, 2004).

As such, Plaintiff's claim under the Act against Defendants will be dismissed.

The Court also notes that John Doe claims are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000).

With respect to Doe Defendants 1 through 11, Plaintiff has identified these Defendants in the body of the Complaint. Plaintiff must timely move to substitute the real identities of these Defendants if he wishes them to remain Defendants in this matter. As to Doe Defendants 12 through 20, Plaintiff has alleged, generally, how these Doe Defendants were involved in the acts and omissions alleged in Plaintiff's Complaint. As such, the Court will allow these Defendants to

remain named by their Doe designations at this time. Plaintiff, however, must move to substitute their real names when Plaintiff is able to identify them during discovery.

Finally, because Plaintiff has been transferred from Alexander to the Penitentiary of New Mexico, Plaintiff's claims for injunctive relief are moot and will be dismissed. Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007).

## IV. CONCLUSION

In sum, the Complaint survives initial review as to all Defendants on Plaintiff's claims under the Eighth Amendment, the ADA and Rehab Act under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Plaintiff's claim under the N.C. Tort Claims Act will be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint [Doc. 1] survives initial review under § 1915(e) and 28 U.S.C. § 1915A as to all Defendants, except that Plaintiff's claim under the N.C. Tort Claims Act shall be dismissed.

2. Plaintiff shall move within twenty (20) days of this Order to substitute the real identities of Doe Defendants 1 through 11. If Plaintiff fails to timely substitute the real identifies of these Defendants, the Court may dismiss them without prejudice and without further notice to the Plaintiff.

3. The Clerk is directed to mail 20 summons forms to Plaintiff for Plaintiff to fill out and identify Defendants Hollar, Gamewell, and Does 1 through 11 in the summonses for service of process, and then return the summonses to the Court. (The seven (7) extra forms are for Plaintiff's future use in the event he identifies any other Doe Defendants through discovery or otherwise.). Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service. Once the Court receives the

summonses from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon Defendants Hollar, Gamewell, and Does 1 through 11.[2]

**IT IS SO ORDERED**.

Signed: November 26, 2019

Frank D. Whitney
Chief United States District Judge

---

[2] The Court notes that Local Civil Rule 4.3 does not govern the procedure for service of process in this matter because Plaintiff alleges, and it appears correctly, that he was and is not a North Carolina State prisoner, but rather a prisoner of the State of New Mexico who was temporarily housed in a North Carolina correctional facility. See N.C. Gen. Stat. § 148-119, et seq.