UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19-CV-00049-FDW

| | | |
|---|---|---|
| MATTHEW JAMES GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF** |
| v. | ) | **DEFENDANTS' MOTION TO** |
| | ) | **DISMISSS AND FOR SUMMARY** |
| FNU HOLLAR, et al., | ) | **JUDGMENT** |
| | ) | |
| Defendants. | ) | |

**NOW COME** Defendants FNU Hollar, Marilyn Gamewell, FNU Massagee, FNU Hensley, FNU Walker, FNU Delozier, FNU Strohl, FNU Mandeville, FNU Copeland, and FNU Lowery, William Johnson, Kay Eggleston, J. Folly, T.B. Greene, R.L. Lail, and L. Putt, (hereinafter "Defendants"), appearing through Assistant Attorney General Bryan G. Nichols, and move the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment as to all claims against them.

**NATURE OF MATTER BEFORE COURT**

Matthew James Griffin ("Plaintiff"), a pro se prisoner, is currently a New Mexico state inmate of the Penitentiary of New Mexico located in Sante Fe, New Mexico. Plaintiff filed this action on April 30, 2019, pursuant to 42 U.S.C. § 1983. [D.E. 1]. Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the U.S. Constitution while Plaintiff was housed at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. Plaintiff also states claims for violation of the Americans with Disabilities Act ("ADA"), for retaliation in violation of Section 504 of the

Rehabilitation Act of 1973 ("Rehab Act"), and a claim for negligence under the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, et seq.

Defendants have moved the Court for summary judgment as to all claims because the record evidence establishes that there are no genuine disputes of material fact and Defendants are entitled to prevail as a matter of law as to all claims. Moreover, Defendants contend that they are entitled to prevail as a matter of law based on sovereign and qualified immunity.

## STATEMENT OF THE CASE

On April 30, 2019, Plaintiff filed a Complaint against Defendants [D.E.1] On November 26, 2019, the Court issued a frivolity order dismissing the claims under the N.C. Tort Claims Act. [D.E. 10] The Court permitted Plaintiff's claims under §1983, the ADA, and the RA to proceed [*Id*.]. In the Complaint, Plaintiff has listed several medical restrictions and claims to have been transferred to a non-handicapped cell without handrails and with an obstructed night-light which are purportedly required according to his medical restrictions. On March 13, 2020 and December 17, 2020 the Defendants filed their Answer and raised applicable defenses. [D.E. 31 and 67] The Defendants now move to dismiss and for summary judgment on all claims.

## STATEMENT OF THE FACTS

**Plaintiff's Factual Allegations**

According to the Complaint, Mr. Griffin alleges that he has a serious vision impairment called strabismus with exotropia that causes him to suffer from double vision, involuntary eye movement, a reduction in visual field, involuntary nystagmus, eye fatigue, and the loss of all depth perception. [D.E.1]. In layman's terms, strabismus with exotropia is a misalignment of the eyes where one or more eyes turns outward.

On or about October 9, 2015, Plaintiff was transferred to the custody of the North Carolina Department of Public Safety (NCDPS). [D.E. 1 at ¶ 29]. In December 2015, the NCDPS began housing Plaintiff in an ADA compliant handicapped cell consistent with the instructions of NCDPS healthcare providers. [Id. at ¶ 35]. On March 26, 2018, Plaintiff was examined by ophthalmologist Dunan E. Berry, M.D., who recommended that Plaintiff be housed in a ground floor handicapped cell, be given a bottom bunk, and not have to use stairs. [Id. at ¶ 36].

Dr. Berry also wrote that Plaintiff would benefit from a night light. [Id.]. On June 12, 2018, Plaintiff was evaluated by Marta Kalinski, M.D., at Main Medical at Alexander with regard to Plaintiff's special needs. In the medical record, Dr. Kalinski wrote, "patient has elevated risk of falls or other type of accidental body injury." Dr. Kalinski, who is Plaintiff's primary care provider, also ordered, "[d]ue to vision impairment, patient needs to have changes placed in Medical Duty Status including handicapped cell, no climbing, falls prevention, bottom bunk, no stairs, no work around hot or sharp objects, avoidance of uneven terrain, no driving." [Id. at ¶ 37].

On or about October 14, 2018, Defendant Gamewell, a nurse practitioner allegedly deleted "night light" from Plaintiff's Medical Duty Status without notifying Plaintiff. Plaintiff's other limitations, restrictions and accommodations remained unchanged at this time. [Id. at ¶ 38].

On November 8, 2018, Defendant Hollar allegedly transferred Plaintiff from a handicapped cell with handrails and a functioning night light to a non-handicapped cell with an obstructed night light. [Id. at 42]. This transfer was from regular population to segregation. [Id. at ¶ 44]. On the same day, Plaintiff showed Defendant Hollar his June 13, 2018 and October 9, 2018 Medical Duty Status reports requiring a handicapped cell and falls prevention measures to which Defendant Hollar replied, "Tough shit." [Id. at ¶ 43]. At this time, there were at least two and up to four handicapped cells in segregation that were being used to house prisoners who were not

handicapped.

On November 8 through 10, 2018, Plaintiff showed the other Defendants his Medical Duty Status and requested a handicapped cell with an unobstructed night light and handrails. [Id. at ¶¶ 47-52]. These Defendants all refused to transfer Plaintiff to a handicapped cell and these Defendants also refused to contact the Alexander Officer-in-Charge (OIC), who had the authority to immediately transfer Plaintiff to a handicapped cell. [Id.]. On November 11, 2018, at approximately 4 a.m., Plaintiff fell while in the nonhandicapped cell, injuring his right foot, right knee, left hip, back, and right shoulder. [Id. at ¶ 56]. Plaintiff required medical attention and prescription medication.

As of the time of filing his Complaint, Plaintiff alleged that his injuries remained "unresolved" and his medical care was "ongoing." [Id. at ¶ 57]. Plaintiff further alleges that each of the Defendants were aware of the risk to Plaintiff and of the medical orders to house Plaintiff in a handicapped cell, the "falls prevention" order, and the need for Plaintiff's cell to have handrails to prevent falling. [Id. at ¶¶ 60-62]. Despite being aware of the substantial risk of harm to Plaintiff, Defendants disregarded the risk of harm and contrary to medical orders, housed Plaintiff in a "non-handicapped cell without handrails that had an obstructed night light which caused Plaintiff to be injured in a fall at night." [Id. at ¶ 64]. Plaintiff seeks monetary and injunctive relief and the recovery of costs and fees, if any. [Id. at 23].

## GOVERNING LAW

As the movants for summary judgment, Defendants must show that they are entitled to such judgment as a matter of law. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the moving party has the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). "[M]ere speculation, however, cannot create a genuine factual dispute, nor can the building of one inference upon another." *DAG Petroleum Suppliers, L.L.C. v. BP P.L.C.*, 268 F. App'x 236, 242 (4th Cir. 2008) (internal quotations omitted). Courts considering dispositive motions "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP*, 213 F. 3d 175, 180 (4th Cir. 2000). "It is the duty of the court to withdraw the case from the factfinder when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241 (4th Cir. 2005).

The "opponent [to a proper summary judgment motion] must do more than simply show that there is some metaphysical doubt as to the material facts[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may utilize various accepted evidentiary tools to oppose a proper motion for summary judgment. *Celotex Corp.*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

<u>Motion to Dismiss Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a suit to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6) (2018). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). In considering a motion to dismiss, the Court need not accept a complaint's legal conclusions drawn from the facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). "[A] complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (*quoting Twombly*, 550 U.S. at 555).

**<u>LEGAL ARGUMENT</u>**

**PLAINTIFF HAS FAILED TO ESTABLISH A VIOLATION HIS CONSTITUIONAL RIGHTS BY DEFENDANTS.**

Defendants should be granted summary judgment because Plaintiff's claim does not amount to a violation of the Americans with Disabilities Act (hereinafter "ADA"), and therefore, the Court lacks subject matter jurisdiction. Alternatively, Plaintiff's individual capacity claim should be dismissed because the ADA does not allow individual capacity claims and Defendant

are entitled to qualified immunity. Furthermore, Plaintiff's official capacity claim should be dismissed because Defendants are entitled to sovereign immunity and Plaintiff has failed to satisfy the elements of a claim under the American's with Disabilities Act. Plaintiff has also not show how Defendants have been deliberately indifferent to his medical needs. Therefore, the Court should grant Defendants' Motion for Summary Judgment.

## I. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001), *cert. denied*, 537 U.S. 1045 (2002) (internal quotations omitted). Qualified immunity's fundamental purpose is intended to give "government officials breathing room to make reasonable but mistaken judgments" and protect "all but the plainly incompetent or those who knowingly violate the law" from the costs of suit. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations marks omitted). A right is "clearly established" where the contours of that right are sufficiently clear so that a reasonable defendant would understand that what he is doing violates that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Thus, even if a plaintiff demonstrates a constitutional violation, an official is nonetheless entitled to qualified immunity if a reasonable person in the official's position "could have failed to appreciate that his conduct would violate those rights." *Meyers v. Baltimore County, Md.*, 713 F.3d 723, 731 (4th Cir. 2013) (citation and internal quotation marks omitted).

Even if Plaintiff could establish a constitutional violation, which Defendants asserts he cannot, Defendants would nonetheless be entitled to qualified immunity. The record evidence establishes that Defendants were not involved in Plaintiff's medical care and did not violate his

constitutional rights. Accordingly, on this evidence, no reasonable fact finder could find that the conduct of Defendants violated a clearly established constitutional right of Plaintiff. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO ANY CLAIMS AGAINST THEM IN THEIR OFFICIAL CAPACITIES

It is unclear from the pleadings on what basis Plaintiff attempts to sue Defendants in their official and individual capacities. However, to the extent Plaintiff attempts to sue Defendants in their official capacities, such a claim fails as a matter of law. A lawsuit filed against a state official in their official capacity is essentially an action against the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The law is clear, neither a state nor an official acting in an official capacity is a "person" subject to suit under 42 U.S.C. § 1983. Furthermore, the Eleventh Amendment generally bars claims against states in state or federal courts. *Alden v. Maine*, 527 U.S. 706, 712-13 (1999). While Congress can abrogate the states' sovereign immunity, it has not done so with regard to claims under 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims against them in their official capacities.

## III. RETALIATION CLAIM

The Defendants are entitled to summary judgment on Plaintiff's retaliation claims. A colorable claim for retaliation in a correctional setting requires: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Moore v. Bennett*, 777 F. Supp. 2d 969, 982 (E.D.N.C. 2011). Courts have repeatedly held that claims of retaliation by offenders are generally treated

"with skepticism because every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran* v. *Morris*, 73 F.3d 1310, 1317 (4th Cir.1996) (quoting *Adams* v. *Rice*, 40 F.3d 72, 74 (4th Cir.1994)). The complaint does not contain allegations, nor has Plaintiff developed evidence, sufficient to satisfy the necessary elements of a retaliation claim.

Plaintiff alleges that Defendants somehow retaliated against him however; the summary judgment evidence demonstrates that Plaintiff's retaliation claim necessarily fails as a matter of law. Aside from the first element of the retaliation claim, Plaintiff cannot establish any of the other elements.

## IV. NO VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff cannot show a violation of the Americans with Disabilities Act. In order to recover under the ADA, a plaintiff must show: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." *Spencer v. Easter*, 109 Fed. Appx. 571, 573 (4th Cir. 2004). Furthermore, compensatory damages (as opposed to injunctive relief) are only available "upon proof of intentional discrimination or disparate treatment." *Smith v. N.C. Dept. of Pub. Safety*, 2019 WL 3798457 at *3 (M.D.N.C. Aug. 13, 2019). As shown below, Plaintiff cannot satisfy any of these four elements.

Additionally, courts across the nation have rejected inmates' ADA claims based on a *delay* in providing an accommodation. *Kiman*, 451 F.3d at 285 (delay in permitting use of cane not an ADA violation); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851 (E.D. Mich. 2008) (delay in providing inmate with a cane was not an ADA violation); *Goldblatt v. Geiger*, 867 F. Supp. 2d 201, 211

(D.N.H. 2012) (delay in allowing telephonic hearings was not an ADA violation); *Ganstine v. Buss*, 2011 WL 6780956 at \*4 (N.D. Fl. Dec. 27, 2011) (delay in providing inmate with CPAP, soft shoes, and wheelchair was not an ADA violation); *see also Mayfield v. Doe*, 2018 WL 5924392 at \*6 (D.N.M. Nov. 13, 2018) (held "while a prison official's delay in accommodating an inmate's disability might be negligent, negligence alone cannot support a Title II claim").

<u>Plaintiff Failed to Allege Facts Sufficient to Show His Alleged Disability was the Cause of Any Alleged Denial of a Benefit</u>

For the third element, Plaintiff must show evidence that his alleged disability was "a motivating cause" of the discrimination. *Halpern*, 669 F.3d at 461. In order to be successful, the Fourth Circuit requires that the exclusion stem from "discriminatory intent due to any alleged disability." *Spencer*, 109 Fed. Appx. at 573 (citing *Bryant*, 84 F.3d at 249 (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled.")).

Plaintiff has not shown that his disabilities were the "motivating cause" in Defendants actions. Simply put, there is no evidence of discriminatory intent by Defendants. At most there is evidence of negligence, but negligence is insufficient to state a valid ADA claim. Therefore, the Court should find that Plaintiff's claim fails to satisfy the third element.

**V. ELEVENTH AMENDMENT IMMUNITY**

Even if the Court considers Plaintiff's alleged ADA violations under § 1983, Plaintiff's official capacity claims are barred by the Eleventh Amendment. "The Eleventh Amendment bars suit in federal court against an unconsenting state and any governmental units that are arms of the state unless Congress has abrogated the immunity." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). The Eleventh Amendment is also applicable to state officers sued

in their official capacity.  *See Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945).  When monetary damages are sought from a state officer in his/her official capacity, the "action is in essence one for the recovery of money from the state."  *Id.* at 464.  "Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *see also Green v. Kearney*, 203 N.C. App. 260, 268 (2010) ("Actions against officer of the State in their official capacities are actions against the State for purposes of apply the doctrine of sovereign immunity").

Since the State of North Carolina has not waived it sovereign immunity as to Plaintiff's claims under the ADA, Plaintiff's claim under the ADA can only proceed if the ADA abrogated North Carolina's sovereign immunity.  Congress can only abrogate the immunity provided by the Eleventh Amendment by "stating unequivocally its desire to do so and only pursuant to a valid exercise of constitutional authority."  *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 484 (4th Cir. 2005). It is undisputed that Congress desired to abrogate States' Eleventh Amendment immunity in passing Title II of the ADA. *See Tennessee v. Lane*, 541 U.S. 509, 518 (2004). However, it is questionable "whether Congress had the power to give effect to its intent." *Id.*

In this case, "the ADA can apply to the States only to the extent that the statute is appropriate" *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001). There are two situations under Section 5 of the Fourteenth Amendment that allow Congress to abrogate North Carolina's sovereign immunity: (1) for "cause[s] of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment," *U.S. v. Georgia,* 546 U.S. 151, 159

(2006); and (2) for "so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct," *Lane,* 541 U.S. at 518.

The Eastern District of Virginia recently dealt with a similar case involving only alleged violations of the ADA, without any alleged violations of the Fourteenth Amendment. *Zemedagegehu v. Arthur*, 2015 WL 1930539 at *8 (E.D. Va. April 28, 2015). The court found that "Plaintiff does not raise a claim under 42 U.S.C. § 1983 to vindicate any actual violations of his constitutional rights. Thus, the Court's decision on this issue is not controlled by *Georgia*." *Id.* Essentially, the Court was able to skip the first analysis regarding actual violations of the Fourteenth Amendment and move directly to the second analysis regarding "so-called prophylactic legislation." *Id.*

In this case, Plaintiff has not alleged actual violations of the Fourteenth Amendment. Instead, his Complaint merely states a statutory cause of action under the ADA.[1] Therefore, only the second analysis is required – and it shows that North Carolina's immunity should not be abrogated.

<u>No Valid Exercise of Congress' Powers</u>

"In determining if a purported abrogation of sovereign immunity is a valid exercise of Congress's prophylactic enforcement powers under Section 5 of the Fourteenth Amendment, the Court applies the *City of Boerne* congruence and proportionality test." *Belk v. Smith*, 2013 WL 5430426 at *6 (M.D.N.C. Sept. 27, 2013) (citing *City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997)). The test includes the following three steps:

> (1) to identify the constitutional right or rights that Congress sought to enforce when it enacted Title II; (2) to determine whether Congress enacted Title II in response to a pattern of unconstitutional disability discrimination; and, (3) to determine whether the rights and remedies created by Title II are congruent and proportional to the constitutional rights it purports to enforce and the record of constitutional

violations adduced by Congress.

*Id.* (quoting *Chase v. Baskerville*, 508 F. Supp. 2d 492, 499 (E.D. Va. 2007), *aff'd*, 305 Fed. Appx. 135 (4th Cir. 2008) (internal citations and quotations omitted)).

Normally, the third step is most critical.[2]  In two district court cases within the Fourth Circuit, both in the prison context, courts have found Title II of the ADA to fail the third step. *Chase*, 508 F. Supp. 2d at 506; *Belk*, 2013 WL 5430426 at *9. Specifically, in *Chase*, the Eastern District of Virginia found that there was "little persuasive support for the proposition that Title II's comprehensive remedial scheme is an appropriately calibrated enforcement mechanism for [the Fourteenth Amendment] rights and the policy of judicial restraint in the prison context."  *Chase*, 508 F. Supp. 2d at 501. The court stated that, "in the prison setting (1) Title II's goal of accessibility and accommodation is generally not congruent with the rights it implicates, and (2) Title II's indiscriminate demand for accommodation and accessibility on pain of money damages is wildly disproportionate to enforcing any constitutional rights."  *Id.*

In *Belk*, the Middle District of North Carolina gave a similar ruling. *Belk*, 2013 WL 5430426 at *9. The court held that "[p]ermitting Tile II to abrogate state sovereign immunity…would convert services that has been offered purely as a matter of grace into vehicles of liability, and it would do so in the context of a system in which states have significantly more leeway in restricting individuals' constitutional rights."  *Id.* The court ultimately ruled that enforcing the rights created by Title II of the ADA "through an abrogation of state sovereign immunity is not a congruent and proportional response to the history of unconstitutional behavior identified by Congress."  *Id.*

Other courts have similarly held that Title II of the ADA does not validly abrogate state

[2] Defendants do not concede the first and second steps, but, for brevity, opt not to address them in this Memorandum.

sovereign immunity. *See, e.g., Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (employment context); *Leach v. Owens*, 2010 WL 5266063, at *5 (W.D. Tx. Dec. 15, 2010) (prison context); *Steele v. Thaler*, 2011 WL 739524, at *11 (S.D. Tx. Feb. 22, 2011) (prison context); *Dorn v. Mich. Dept. of Corr.*, 2017 WL 2436997, at *7 (W.D. Mich. June 6, 2017) (prison context).

For the same reasons noted in *Chase* and *Belk*, the Court should find that allowing Plaintiff to enforce rights he allegedly has under Title II of the ADA through an abrogation of North Carolina's sovereign immunity is not a congruent and proportional response, and therefore, dismiss Plaintiff's claim against Defendants in their official capacities due to the sovereign immunity afforded by the Eleventh Amendment.

## VI. FAILED TO EXHAUST ALL ADMINISTRATIVE REMEDIES

Exhaustion of all available remedies prior to bringing an action is mandatory in all actions brought by inmates related to prison conditions. Section 803(d) of the PLRA provides that: No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted. *codified at* 42 U.S.C. § 1997e(a). As the United States Supreme Court has "often observed, that language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, U.S. , 136 S. Ct. 1850, 1856 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S. Ct. 2378, 2382 (2006); *accord Jones,* 549 U.S. at 211, 127 S. Ct. at 918-919).

In this case, Plaintiff did not exhaust his administrative remedies pertaining to his claims. The Supreme Court also clarified that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter v.* , 534 U.S. 516, 532, 152 S.E.2d 983, 992 (2002); , 548 U.S. at 85, 126 S. Ct. at 2383 ("exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just suits under § 1983."). The plain language of § 1997e(a) requires prisoner actions under "any" federal law to meet the exhaustion requirement, including suits brought under the Americans with Disabilities Act ("ADA") or any other law. *See Jones v. Smith,* 266 F.3d 399, 400 (6th Cir. 2001) (applying PLRA exhaustion requirement to prisoner's ADA action); *Carrasquillo* v. *New York,* 324 F. Supp.2d 428, 442 (S.D.N.Y 2004) (stating that Congress intended § 1997e(a) to apply to all federal suits); *Williams* v. *Wake Cty.,* No. 5:01-CT-173-BR, 2004 WL 2660656, at *1 (E.D.N.C, Jan. 21, 2004)

The timing of a prisoner's exhaustion of administrative remedies is determinative. A case is "brought" within the meaning of 42 U.S.C. § 1997e(a) at the time a prisoner tenders his § 1983 complaint to the district court by placing it in the mail, not when the district court grants the prisoner leave to proceed and files the complaint. *Ford* v. *Johnson,* 362 F.3d 395, 400 (7th Cir. 2004); *Vaden* v. *Summerhill,* 449 F.3d 1047, 1050 (9th Cir. 2006). Bringing suit before exhausting administrative remedies dooms the action.*Sen\, Inc.,* 407 F.3d 674, 683 (4th Cir. 2005) (holding that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit" because the PLRA "requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court."),*abrogated on other grounds by Custis v. Davis,* 851 F.3d 358 (4th Cir. 2017); *Germain v. Shearin* 653 F. App'x 231, 234 (4th Cir. 2016) (unpub.) ("Exhaustion has not occurred and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint."); *Johnson* v. *Jones,* 340 F.3d 624, 627-28 (8th Cir. 2003) ("permitting exhaustion *pendente l i f e* undermines the objectives of section 1997e(a) .. *W*

*o o d w a r d v. Daughter)',* 845 F. Supp.2d 681, 684 (W.D.N.C. 2012) ("Consequently, a prisoner does not comply with the mandatory requirements of 42 U.S.C. § 1997e(a) by exhausting his remedies during the course of litigation; exhaustion must occur before the filing of the lawsuit, or the case must be dismissed."). A district court may not excuse a failure to exhaust, even to consider special circumstances. *Ross* U.S. at , 136 S. Ct. at 1856-57; *see also Germain,*The Supreme Court clarified that the PLRA "uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." U.S. at 93, 126 S. Ct. at 2387. Thus, pursuant to the administrative law doctrine of "proper exhaustion," a prisoner must satisfy all steps required by the prison's administrative remedy procedure "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91, 126 S. Ct. at 2386.

"The 'applicable procedural rules' that a prisoner must properly exhaust, are defined not by the PLRA but by the prison grievance process itself." *Jones*, 549 U.S. at 201, 127 S. Ct. at 913. One important purpose of the exhaustion requirement is to give prison officials a fair opportunity to administratively address the claims that will eventually form the basis of a lawsuit. *Id.* at 219, 127 S. Ct. at 923; *Moore* v. *Bennette,* 517 F.3d 717 at 725 (".. . to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively.") (int. quot. omitted). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and also facilitates the development of "a useful administrative record" in the event of subsequent litigation. *Jones,* 549 U.S. at 204, 127 S. Ct. at 914-15.

"The level of detail necessary in a grievance to comply with the grievance procedures will

vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218, 127 S. Ct. at 923. Interpreting the requirements of the grievance procedure applicable to prisoners in North Carolina State correctional institutions, the Fourth Circuit held that, where a North Carolina prisoner files suit complaining of inadequate care relating to more than one medical condition, dismissal is appropriate where the underlying grievance(s) did not provide a "fair opportunity" for NCDPS officials to investigate and address the purported inadequate treatment pertaining to *each* alleged medical condition. *See Moore,* 517 F.3d at 728-29 (affirming dismissal based on exhaustion where the plaintiffs grievances concerning his medical care for pancreatic illness and Hepatitis C did not alert prison officials to his additional gout problem, stating that allowing plaintiff "to bring suit for alleged inadequate treatment of his gout would not serve the purposes behind the exhaustion requirement"). "Thus, regardless of whether a particular defendant is named in a grievance, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate." *Davidson* v. *Davis,* No. 3:13-cv-590-FDW, 2015 WL 996629, at *3 (W.D.N.C. Mar. 6, 2015) (holding that PLRA's fair notice requirement required dismissal of claim where allegations in grievance failed to provide NCDPS officials with notice of a claim against assistant superintendent or provide NCDPS officials opportunity to address problem before being hauled into court); *Mack v. Turner,* 169 F. Supp.3d 666, 673 (S.D. W. Va. 2016) (same). The NCDPS has a three-step Administrative Remedy Procedure ("ARP") governing the filing and appeal of grievances. N.C. Gen. Stat. §§ 148-118.1 *et seq.;* N.C. Dep't Pub. Safety, Policy and Procedure Manual, Ch. G, §§ . 0300 *et seq.,*; "North Carolina prisoners can satisfy the exhaustion requirement by completing all three steps of the nmate grievance process, which culminates in the

rendering of a decision upon the prisoner's appeal by the North Carolina Inmate Grievance Resolution Board." *Harris* v. *Midford,* No. l:10-cv-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. 2011).

The ARP defines a "grievance" as "a written complaint by an inmate on the inmate's own behalf concerning an action, incident, policy or condition within the facility or within Prisons as a whole." State of North Carolina Department of Public Safety Prisons Policy and Procedures, Chapter G, § .0301(b). The procedural rules of the ARP require that written grievances be submitted on Form DC-410. *Id.* at § .0304(a). While "[t]he PLRA does not require particularity with respect to grievances," *Ellis* v. *Lewis,* No. 5:12-CT-3122-FL, 2015 WL 5714874, at *9 (E.D.N.C. Sep. 29, 2015), the United States District Court for Eastern District of North Carolina has construed the ARP's definition of "grievance," in harmony with the ARP's other provisions, to require, at a minimum, that each grievance submitted "relate to a single, discrete 'action, incident, policy or condition.'" *Williams* v. *Crosby,* No. 5:12-CT-3056-F, 2013 WL 791253, at *10 (E.D.N.C. Mar. 4, 2013). Where the events described in aprisoner's grievance submitted pursuant to the ARP and the prisoner's complaint filed in federal court are separate events, the complaint should be dismissed for failure to properly exhaust administrative remedies. *Id.* at *11.

## VII. FAILED TO ESTABLISH DELIBERATE INDIFFERENCE

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs The record evidence, however, indicates that Defendants are entitled to summary judgment for three reasons. First, Defendants were was not directly involved in any relevant medical decisions related to Plaintiff and thus cannot be liable under § 1983. Additionally, Plaintiff's attempt to impute any, alleged but denied, liability of others to Defendants fails as a matter of law. Lastly,

Plaintiff cannot present any evidence that Defendants were aware actually aware of any serious medical need and the attendant risks thereof. Nor can Plaintiff demonstrate that despite this knowledge, Defendants nonetheless consciously ignored such risks. Thus, Plaintiff cannot present any credible evidence upon which a reasonable jury could return a verdict in his favor on his deliberate indifference claim against Defendants. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

### A. Components of a Deliberate Indifference Claim.

In the prison context, medical care is a basic human need, the deprivation of which, under certain circumstances can form the basis of an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).The Eighth Amendment forbids 'deliberate indifference' to a prisoner's 'serious medical needs.'" *Oliver v. Daniels*, No. 5:16-CT-03101-FL, 2019 U.S. Dist. LEXIS 168331, at *32 (E.D.N.C. Sep. 30, 2019) (unpublished case attached as Exhibit 2) *citing Estelle*, 429 U.S. 97, 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

"[A] prison official violates the Eighth Amendment only when two requirements are met[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The first requirement is the deprivation of an objectively "sufficiently serious" basic human need. *Id*. The second requirement is a "sufficiently culpable state of mind" or stated differently, "deliberate indifference" to inmate health or safety. *Id*. "Deliberate indifference sets a particularly high bar to recovery." *McClary v. Lightsey*, No. 5:16-CT-3052-BO, 2019 U.S. Dist. LEXIS 181912, at *9 (E.D.N.C. June 17, 2019) (unpublished case attached as Exhibit 3) *quoting Iko v. Shreve*, 535 F3d 225, 241 (4th Cir. 2008).

"Only extreme deprivations are adequate to satisfy the objective component […] to

demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotations and citations omitted). Under the second requirement, "it is not enough that an official <u>should</u> have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (emphasis in original). "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

**Defendants were not Involved in Providing Patient Care and Therefore Cannot be Liable Under Section 1983.**

Defendants' lack of involvement in Plaintiff's medical care is fatal to his claim of deliberate indifference to a serious medical need. The Supreme Court has stated that deliberate indifference can be "manifested by [medical staff] in their response to the prisoner's needs or by [custody staff] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

Plaintiff has not sufficiently demonstrated that Defendants were involved in any deprivation of his rights. Plaintiff does not allege that Defendants responded to a particular medical need of his in any particular manner. Instead, he contends that Defendants were deliberately indifferent to his serious medical needs because they had knowledge of inadequate medical care.

In short, Plaintiff's effort to impose § 1983 liability on Defendants based on an allegation

that they were aware of inadequate medical care is insufficient and fails as a matter of law. Additionally, despite his allegation that Defendants somehow thwarted the care provided by others, Plaintiff has failed to produce any record evidence to support this assertion. On this record, Plaintiff will be unable to present any credible evidence that Defendants were actually involved in the deprivation of his right to adequate medical care. Therefore, there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law.

**B. Plaintiff cannot present Sufficient Evidence to Support the Subjective Element of his Deliberate Indifference Claim.**

Plaintiff's bald assertions that Defendants were generally aware of inadequate medical are insufficient to satisfy the subjective component of a deliberate indifference claim. As noted above, deliberate indifference require subjective knowledge by the defendants of a serious medical need and the health risks associated therewith. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Plaintiff does not allege and cannot demonstrate that Defendants were specifically and actually aware of any particular medical need, let alone that the need was serious, and that it carried certain attendant health risks. To survive summary judgment on a deliberate indifference to serious medical needs claim, Plaintiff must present evidence sufficient to show that Defendants actually knew of a serious risk of harm and nonetheless chose to disregard the risk.

The record evidence demonstrates that Defendants were was not involved in Plaintiff's medical decisions. On this evidence, Plaintiff cannot show that Defendants were actually aware of a serious medical need and its related risks to Plaintiff health. Moreover, Plaintiff cannot show that Defendants disregarded those risks despite such knowledge. On this evidence, Plaintiff will be unable to present any credible evidence to support the necessary subjective component of his deliberate indifference claim. Therefore, there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law.

## VIII. FAILED TO SHOW INTENTIONAL DISCRIMINATION

"While the Fourth Circuit has not specifically addressed the standard required for proving intentional discrimination, the majority of circuits to have decided the issue have adopted a deliberate indifference standard, as have some district courts within the Fourth Circuit." *Smith*, 2019 WL 3798457 at *3 (compiling cases). Under the Eighth Amendment, deliberate indifference to a serious medical need requires proof (1) that, objectively, the prisoner was suffering from a serious medical need and (2) that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was provided. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 Fed. Appx. 745, 755 (4th Cir. 2018). As shown below, Plaintiff cannot satisfy any of these requirements.

*Plaintiff Did Not Have an Objectively Serious Medical Need*

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). As stated above, correctional staff are entitled to rely on the advice of healthcare staff. *See Spruill*, 372 F.3d at 236; *Miltier*, 896 F.2d at 854-855. This is consistent with the NCDPS Policy Manual which states that "[c]linical matters involving medical, nursing, mental health and dental judgments are the sole province of licensed health care providers." The Court should find that Plaintiff's medical condition was not objectively serious.

b.      *Defendants Did Not Act with Deliberate Indifference*

Generally "deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302, (4th Cir. 2004) (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). Regarding prisoners complaints about medical care, the Supreme Court held that "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Mere negligence does not amount to deliberate indifference. Furthermore, even if her decision was negligent, Defendants were still entitled to rely upon it. Therefore, the Court should find that Defendants were not deliberately indifferent.

## IX. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL CAPACITY CLAIMS

Even if the Court were to consider Plaintiff's ADA claims under Section 1983, it is clear that Plaintiff cannot bring an ADA claim against Defendants in their individual capacity. *See Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999) (affirming dismissal of individual capacity defendants). Plaintiff has failed to show that Defendants violated any of his constitutional rights, and therefore, Defendants should be granted summary judgment on the basis of qualified immunity. The doctrine of qualified immunity protects government officials from actions for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has repeatedly "stressed the importance of resolving immunity

questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, (1985)). "[I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526. "The test for qualified immunity is a two-pronged inquiry. The court must determine, in no particular order, (1) whether a constitutional right has been violated on the facts alleged and (2) whether the right was clearly established at the time so that it would be clear to an objectively reasonable officer that his conduct violated that right." *Adams v. Parsons*, 2011 WL 1464856 at *4 (S.D. W.Va. April 15, 2011) (citing *Saucier v. Katz,* 533 U.S. 194, 200–02 (2001)).

## X. THE ADA AND REHABILITATION ACT DO NOT AUTHORIZE A SUIT FOR MONETARY DAMAGES AGAINST DEPARTMENT DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

Because the ADA and the Rehabilitation do not authorize individual-capacity suits against state officials, the Court must dismiss those individual capacity claims against the Department Defendants. *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001).

## CONCLUSION

For the foregoing reasons, Defendants should be entitled to summary judgment.

This the 21th day of April, 2021.

JOSHUA H. STEIN
ATTORNEY GENERAL

/s/Bryan G. Nichols
Bryan G. Nichols
Assistant Attorney General
N.C. State Bar No. 42008
N.C. Department of Justice
Public Safety Section

P.O. Box 629
Raleigh, North Carolina 27699-9001
Telephone:  (919) 716-6568
Facsimile:  (919) 716-6761
E-Mail:  bnichols@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, and on April 22, 2021 mailed a copy to the following:

> Matthew James Griffin
> NMCD # 39704
> Penitentiary of New Mexico
> P.O. Box 1059
> Santa Fe, NM 87504
> *Pro Se Plaintiff*


> Matthew James Griffin
> NMCD #39704
> Southern NM Correctional Facility
> P.O. Box 639
> Las Cruces, NM 88004-0639
> *Pro Se Plaintiff*


This the 21th day of April, 2021.

/s/Bryan G. Nichols
Bryan G. Nichols