Matthew James GRIFFIN
39704
P.O. Box 639
Las Cruces, NM 88004
575.523.3200

FILED
CHARLOTTE, NC

JUN 29 2021

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

No. 5:19-cv-00049-MR

| | |
|---|---|
| MATTHEW JAMES GRIFFIN,<br><br>Plaintiff,<br><br>vs.<br><br>Sergeant Hollar, et al,<br><br>Defendants. | Plaintiff's Response IN Opposition (PRIO) To Summary Judgment<br><br>PRISON Mail-box rule date: 15JUN2021 |

Plaintiff, Matthew James GRIFFIN, pro se, hereby submits Plaintiff's Response IN Opposition (PRIO) to Defendants Motion (doc. 80, 81) for Summary Judgment

1

Submitted concurrently for filing herewith is Plaintiff's Statement of Fact (PSOF) (doc. ____) and Plaintiff's First Declaration (PFD) (doc ____) with PFD Exhibits #1 through #27.

For his Response In Opposition (PRIO) to summary judgment, plaintiff states:

## I. Facts

1. Plaintiff a former government employee has been incarcerated since 1989. See, PSOF, Fact 1 and 2. On August 15, 2001, while lying on the ground in full restraints, plaintiff was kicked in the left eye by a New Mexico corrections officer which caused plaintiff to suffer a permanent eye injury. See, PSOF, Fact 4. In 2003 a New Mexico ophthalmologist diagnosed Plaintiff as having strabismus with large angle alternating exotropia. See, PSOF, Fact 5. In 2004 plaintiff brought suit against the

2

individual NMCD officers who caused his eye injury under 42 USC 1983. See PSOF Fact 6. Plaintiff was the prevailing party in the lawsuit. Id at Fact 6. IN 2008 plaintiff was transferred by New Mexico to the California Department of Corrections and Rehabilitation (CDCR) where plaintiff was diagnosed with a serious vision impairment and began receiving reasonable accommodations related to his vision impairment. See, PSOF Fact 7. Plaintiff is a handicapped prisoner of the State of New Mexico. See, PSOF, Facts 3 and 62

2. In 2015, Plaintiff a handicapped prisoner of New Mexico was transferred to North Carolina as a safekeeper. See, PSOF Fact 8. Plaintiff arrived at North Carolina's Central Prison Facility (CPF) on October 9, 2015, and was diagnosed with diplopia (double vision) by Dr. Luiz MiNeire, M.D who authored a medical duty status order

3

for Plaintiff that required a bottom bunk, Falls prevention and eye-glasses. See, PSOF, Fact 9.

3. An NC-DPS Medical Duty Status contains the medical orders of NC-DPS health care providers for a specific prisoner. See, PSOF at Fact 12.

4. On November 09, 2015, North Carolina opthalmologist Doctor V. X. Manjunath, M.D. diagnosed plaintiff as having strabismus with large angle alternating exotropia. Dr. Manjunath, M.D. made additional recommendations regarding plaintiff's vision related restrictions, limitations and accommodations. On November 22, 2015 plaintiff was removed from general population where there were stairs in his path of travel when the supervisor of Nursing authored a medical duty status order regarding plaintiff's vision related restrictions, limitations

4

and accommodations. See PSOF, Fact 11. Plaintiff was transferred to the CPF Hospital. Id., at fact 11. On December 21, 2015, plaintiff was transferred from the CPF Hospital to a handicapped cell at the Alexander Correctional Institution (AXCI). See PSOF Fact 13. Handicapped cells at the AXCI contain handrails, electrical outlet, desk, toilet, bunk and an extended sink (the edges of which ~~contain~~ serve as additional grab bars). See PSOF, Facts 27. On January 11, 2016, AXCI Nurse R. Harris, RN-Clinician I, ordered handicapped cell housing and orderly assistance for the vision impaired plaintiff. See PSOF Fact 14. AXCI is a chronic care medical prison owned and operated by the NC-DPS Division of Prisons. See PSOF, Fact 51.

5. In October of 2016, plaintiff was examined by Chief Medical Officer

5

Doctor Marta M. Kalinski, M.D. who authored a medical duty status order regarding plaintiff's vision related restrictions, limitations and accommodations which included a handicapped cell falls prevention, orderly assistance and no climbing. See PSOF, Fact 15. On November 6, 2017, the NC-DPS Division of Prisons, ADA Coordinator approved plaintiff's assignment to the ADA. See PSOF, Fact #16

6. On March 26, 2018, North Carolina opthalmologist Doctor Duncan Berry, M.D. diagnosed plaintiff with strabismus and large angle alternating exotropia which results in plaintiff having diplopia (double vision) and no depth perception. See PSOF, Fact #17. Dr Berry ordered an eye-patch for plaintiff. Id at Fact #17. For safety as plaintiff has no depth perception Doctor Berry, M.D. recommended a ground floor handicap cell, bottom

6

bunk, no stairs and a night light. Id at Fact 17. Doctor Berry further recommended other limitations that included no driving, no work around hazardous machinery, no height over 2 feet and no work around sharp or hot objects. See PSOF Fact 17. On June 12, 2018 Doctor Marta M. Kalinski performed a special needs evaluation of plaintiff. See PSOF Fact 18. Doctor Kalinski M.D. specifically found that plaintiff "has an elevated risk of falls or other accidental body injury." See PSOF Fact 19. On June 12, 2018, Doctor Kalinski, M.D., also found that "Due to vision impairment, patient needs to have changes placed into Medical Duty Status including handicapped cell, no climbing, falls prevention bottom bunk, no stairs, no work around hot or sharp objects, avoidance of uneven terrain, no driving." See PSOF Fact 20. Doctor Kalinski, M.D., further

7

found and wrote patient will need some orderly assistance for cell cleaning and additional daily assignments. See PSOF Fact 20. On June 13, 2018 the medical orders of Dr Kaliaski M.D. were entered into Plaintiff's Medical Duty Status order. See, PSOF, Fact 21.

7. Plaintiff has a serious vision impairment which has been diagnosed by Dr Berry, M.D. and Dr Kaliaski, M.D. as strabismus with large angle alternating exotropia which causes plaintiff to suffer diplopia (double vision), uncontrolled eye movement, nystagmus and the loss of all depth perception. See, PSOF, Fact 22, Plaintiff's diagnosed serious vision impairment substantially limits his major life activities which include, but are not limited to his ability to ambulate safely, read, work, drive, navigate uneven terrain, climb stairs, perform manual tasks involving eye-hand coordination safely and the

8

ability to see and perceive his surroundings correctly. See, PSOF, Fact 23.

8. Plaintiff is a registered recipient of services from the Library of Congress, National Library Service (NLS) for the Blind and Print Disabled and the North Carolina State Library for the Blind and Physically Handicapped (LBPH). See, PSOF Fact 24 and 25. The NC-DPS Division of Prisons, ADA Coordinator approved plaintiff's request for ADA reasonable accommodations of digital talking books and a digital talking wrist watch. See, PSOF, Fact 25.

9. Plaintiff is a qualified individual with a diagnosed serious vision impairment that substantially limits one or more major life activities. See, PSOF Facts 17-26, 28 and 70. Plaintiff is handicapped or disabled within the meaning of the Americans with

9

Disabilities Act (ADA) and the Rehabilitation Act (RA) of 1973. See, PSOF, Fact 26. Plaintiff requires a handicapped cell because he has an active falls prevention order and only handicapped cells have handrails to prevent falling. See, PSOF, Fact 28. Additionally, Plaintiff has an approved ADA reasonable accommodation for a digital audio book player and only handicapped cells have an electrical outlet with which to power the appliance. See, PSOF, Fact 28.

10. On October 14, 2018 Defendant Marilyn M. Gamewell, FNP-BC, deleted night light from the Medical Duty Status of the vision impaired plaintiff. See, PSOF, Fact 29

11. On November 08, 2018, Defendant Holler knew of plaintiff's ADA assignment, falls prevention order and handicapped cell assignment order and personally transferred, escorted and placed plaintiff in a

10

Non-handicapped cell (LA-33) that had an obstructed night light. See, PSoF Facts 30, 31, 36 and 60. Plaintiff's Medical Duty Status orders of June 13, 2018[1] and October 09, 2018[2] are filed in the record proper of this civil action. See, PSoF Fact 33 and 34. The AxCI Officer-In-Charge (OIC) has the authority to immediately transfer any prisoner to comply with orders of AxCI health care providers and the NC-DPS Administrative Remedy Procedure (ARP) requires communication with staff to attempt to informally resolve issues/problems without a formal grievance. See, PSoF Fact 35. Defendant Hollar knew of the Medical Duty Status orders to house plaintiff in a handicapped cell as a falls prevention measure.

---

[1] document 1-1 at page 8.
[2] document 1-1 at page 10.

11

disregarded those medical orders and refused plaintiff handicapped cell housing as ordered by a medical doctor. See, PSOF at Fact 36.

12. After hearing plaintiff's request for a handicapped cell and viewing plaintiff's ADA assignment and Medical Duty Status' Defendant Holler refused to contact the OIC to obtain handicapped housing for plaintiff and replied, "Tough shit." See, PSOF, Fact 36

13. From November 08, 2018 through November November 10, 2018, Defendants Massagee (Doe #1), Johnson (Doe #18), Folley (Doe #12) Hensley (Doe #2) Copeland (Doe #8) Lowery (Doe #11), Lail (Doe #13) Putt (Doe #14) Walker (Doe #3) Delozier (Doe #5), Mandeville (Doe #7), Strohl (Doe #6), Greene (Doe #15), and Eggleston (Doe #16) knew of the Medical Duty Status orders to house plaintiff in a handicapped cell as a

12

falls prevention measure, disregarded those medical orders and refused plaintiff handicapped cell housing as ordered by a medical doctor. These same Defendants after hearing plaintiff's request for a handicapped cell, viewing plaintiff's ADA assignment and Medical Duty Status" refused to contact the Officer-In-Charge (OIC) to obtain handicapped cell housing for the plaintiff. See PSOF Facts 37, 38, 39, 40, 41, 42, 43, 44, 45, ~~Serial~~ 46, 47, 48, 49, 50 and 60.

14. The NC-DPS is a public entity or agency that accepts federal funds from the federal government. See PSOF Fact 58. Medical care and handicapped housing are programs, benefits or services provided to plaintiff and other prisoners by the North Carolina Department of Public Safety (NC-DPS). See PSOF Fact 59.

13

Between November 08, 2018 and November 10, 2018 plaintiff complained to Defendants Hollar JOHNSON (Doe#18) Massagee (Doe#1), Hensley (Doe #2), Copeland (Doe#8), Lowery (Doe#11) Walker (Doe#3), Delozier (Doe#5), Mandeville (Doe#7), Strohl (Doe#6) Folley (Doe#12), Cail (Doe#13), Putt (Doe#14) Greene (Doe#15) and Eggleston (Doe#16) that he was being denied medical care prescribed by Doctor Kalinski and reasonable accommodations under the Americans With Disabilities Act (ADA) that were ordered by a medical doctor for his own safety due to his vision impairment. Each of these Defendants denied plaintiff access to the programs, benefits and services of the NC-DPS by refusing to comply with the medical orders of a doctor to provide handicapped housing and reasonable accommodations to the vision impaired plaintiff and each of the Defendants

14

did so soley in retaliation for plaintiff's complaints because the plaintiff was disabled/handicapped by reason of his serious vision impairment. See, PSOF, Fact 60.

15. During 2018 at the Alexander Correctional Institution (AxcI) other handicapped/disabled prisoners including, but not limited to, Hugh Lucklear Sr. (#0910679) Duncan Ray Bynum (#0060364) and Arthur Goulette (#0163903) were provided reasonable accommodations of falls prevention measures and/or handicapped cells in relation to their disabilities as reasonable accommodations ordered by AxcI health care providers. See, PSOF, Fact 66. Plaintiff was treated differently when each of the named Defendants denied plaintiff reasonable accommodations of falls prevention measures and a handicapped cell as ordered by a medical doctor

15

due to his serious vision impairment. See PSOF Fact 67. The disparate treatment of plaintiff was not related to any legitimate penological interest. See PSOF Fact 67. On November 08, 2018 at AxCI there were vacant [3] handicapped cells in segregation and segregation handicapped cells that were occupied by prisoners who were not handicapped and who had no medical order for a handicapped cell. See, PSOF, Fact 32.

16. On November 11, 2018 at approximately 0400 hours the vision impaired plaintiff fell in a NON-handicapped cell (LA-33) with an obstructed night light and no handrails injuring his right foot, right knee, left hip, back and right shoulder. See, PSOF

_____

[3] Segregation cell, RHU D#13 was an ADA compliant handicapped cell at AxCI and was vacant on November 08, 2018. See, Plaintiff's First Declaration (PFD) at para. 46.

16

Fact 52. On that same day plaintiff reported his fall and injuries in writing. See PSoF, Fact 53. After plaintiff's fall and injury on November 11, 2018, his prescription back pain medication (gabapentin) had to be increased due to the injury to his back.[4] See, PSoF, Fact 54 and 55. Plaintiff has submitted other medical requests for services for his injuries of November 11, 2018. See, PSoF Fact 56. On May 3, 2019 after his November 11, 2018 fall and injury at AxcI plaintiff was transferred to the Warren Correctional Institution (WCI) and Plaintiff's Medical Transfer Summary show that his injuries of November 11, 2018 (foot injury, right knee injury, back injury and right shoulder injury) are current health problems. See, PSoF,

_____

[4] Exhibit #24 of the PFD specifically cites plaintiff's back pain.

17

Fact 57.

17. On November 13, 2018, after his fall an injury of November 11, 2018, plaintiff was transferred from NON-handicapped cell LA-33 to RHU handicapped cell D#13 at AXCI. See, PSOF, Fact 61

18. Plaintiff's diagnosed vision impairment presented a serious medical need. See, PSOF, Fact 64. The conduct of each named Defendant constituted a deliberate indifference to the serious medical needs of plaintiff See, PSOF, Fact 65. Each of the named Defendants was acting under the color of state law. See, PSOF, Fact 68.

19. Prior to initiating this civil action plaintiff exhausted his available administrative remedies within the NC-DPS, Division of Prisons,

18

by filing a grievance and pursuing it through all available levels of appeal within the NC-DPS. See, PSOF Fact 69. Plaintiff's final grievance appeal decision is filed[5] in the record proper of this civil action — demonstrating exhaustion.

20. On June 14, 2019, plaintiff was returned to the custody of New Mexico where he applied for and received vision related ADA reasonable accommodations. See, PSOF, Fact 62

21. The facts and Exhibits of Plaintiff's First Declaration (PFD) are capable of being presented in a form that would be admissible in evidence. See, PSOF, Fact 63

---

5 See, document 1-1 at page 6

19

# II. ARGUMENT

## Rule 12(b)(6):

22. Defendants Rule 12(b)(6) motion is untimely and must be denied. Rule 12(b)(6) motions seeking dismissal must be Filed before a responsive pleading is served. See, Patrick vs Rivera-Lopez 708 F.3d 15, 18 (1st Cir. 2013) the untimely motion prejudices plaintiff because it prevents him from amending his complaint. However, so long as they are consistent with the pleading "factual elaborations" supplied by pleaders can be used to clarify allegations of a pleading. See, Geinosky vs City of Chicago 675 F.3d 743, 745, Note 1 (7th Cir. 2012). Pro se pleadings are liberally construed. Haines vs Kerner, 404 U.S. 519, 520-521 (1972). Pro se pleaders are ordinarily given leave to amend.

20

Here the Court should also consider Plaintiff's Statement of Fact (PSOF) and Plaintiff's First Declaration (PFD) which are submitted concurrently herewith for filing in opposition to summary judgment. If the Court finds any need for amendment, in the interest of judicial economy, it should be done through the Rule 16 Pre-Trial Order. A pre-trial order may include amendments to the pleadings. Deere vs Goodyear Tire and Rubber Co. 175 F.R.D. 157, 164-165 (N.D.N.Y. 1997); Wilson vs Muckala 303 F.3d 1207, 1215 (10th Cir 2002) (amendment to pleading not necessary if issue addressed in a pretrial order, because pretrial order supersedes the pleadings).

Plaintiff has Established
A Constitutional Violation:

23. The Supreme Court cited "intentionally interfering with treatment

21

once prescribed" as an example of deliberate indifference proscribed by the Eighth Amendment. See Estelle vs. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285 (1976). Plaintiff was diagnosed by multiple medical doctors with a serious vision impairment consisting of strabismus with large angle alternating exotropia which causes diplopia (double vision), uncontrolled eye movement, nystagmus and loss of all depth perception. See, PSOF at Facts 17-28. Dr. Kalinski M.D. specifically found that due to his vision impairment plaintiff had an elevated risk of falls or other accidental injury. See, PSOF Fact 19. Dr. Kalinski, M.D. prescribed a handicapped cell as a falls prevention measure. See, PSOF Fact 20. Plaintiff was also ADA assigned by the NC-DPS, Division of Prisons ADA coordinator and the ADA Coordinator approved other reasonable accommodations for plaintiff including digital audio books from the State Library for the Blind and Physically

22

handicapped and a digital talking wrist watch. See PSOF Facts 16, 24 and 25. Each of the Named Defendants except Gamewell knew the plaintiff was vision impaired, ADA assigned by the NC-DPS, had Medical Duty Status orders for a handicapped cell prescribed as a falls prevention measure and they each disregarded those medical orders and refused plaintiff handicapped cell housing. See, PSOF, Facts 30-31, 33-50 and 60.

24. Likewise, Defendant Gamewell, knew plaintiff was handicapped as evidenced by her assigning plaintiff to a handicapped cell on October 14, 2018. See Plaintiff's First Declaration (PFD) at paragraph 36 and PFD Exhibit #19 (Medical Duty Status order authored by Defendant Gamewell). However, contrary to the recommendation of opthalmologist Duncan Berry, M.D. and the June 13, 2018 Medical Duty Status order of Dr. Kaluski, M.D. —— Defendant Gamewell deleted Night light from the

23

~~After~~ vision impaired plaintiff's Medical Duty Status Order. <u>Compare</u>, PSOF Fact 17 (recommendations of Dr Berry) and Plaintiff's First Declaration (PFD) Exhibit #15 (Medical Duty Status order for a night light) <u>with</u> PSOF, Fact 29 and PFD Exhibit #19 (Medical Duty Status authored by Defendant Gamewell, deleting night light). ~~This~~ constitutes failure to follow the recommendations of Dr Berry a specialist in opthalmology and ~~failure to~~ interfering with treatment (a night light) prescribed by Dr Kaliowski, M.D. See PSOF Fact 17 and PFD at Exhibit #15. Defendant Gamewell's deletion of night light from the vision impaired plaintiff's Medical Duty Status order on October 14, 2018, was so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier vs. Beorn</u> 896 F.2d 848, 851 (4th Cir 1990). Doctor Kaliowski is not just any medical doctor she is the Chief Medical Officer of

24

AxCI. See, PSoF 15. Defendant
Gamewell's disagreement is not with
plaintiff. Rather it is with Doctor
Berry and Dr Kaliski — both of
whom are medical doctors — something
Defendant Gamewell is not. Refusal to
follow a specialists recommendations supports
a claim of deliberate indifference. Jones
vs. Simek 193 F.3d 485, 492 (7th Cir 1999).

25. Only handicapped cells at the
AxCI contain handrails to prevent
falling. See PSoF, Fact 27 and 28.
Each of the named Defendants except
Gamewell, knew the plaintiff was vision
impaired, ADA assigned by the NC-DPS,
had medical duty status orders for
falls prevention and handicapped cell
housing and these Defendants refused
plaintiff handicapped cell housing and
refused to contact the Officer - In -
Charge (OIC) to obtain handicapped
cell housing for the plaintiff. See,
PSoF, Facts 30-31, 33-50 and 60.

25

Under these facts plaintiff has shown these Defendants acted intentionally and with discriminatory intent. They knew that 1) objectively plaintiff ~~has~~ had a serious medical need and 2) that subjectively the prison staff [Defendants] were aware of the need for medical attention but failed to either provide it or ensure the needed care was provided. See Farmer vs Brennan 511 U.S. 825, 837 (1994). Deliberate indifference requires that prison official(s) knew of and ignored the inmates serious medical needs or a risk to his safety. See Young vs. City of Mount Ranier 238 F.3d 567, 575-76 (4th Cir 2001) (citing White ex-rel. Chambliss, 112 F.3d 731, 737 4th Cir 1997) ("A claim of deliberate indifference ... implies at a minimum defendants were plainly placed on notice of a danger and chose to ignore the danger Notwithstanding

26

the Notice). Defendants knew of the Medical Duty Status orders requiring Falls prevention and handicapped cell assignment and they chose to ignore the medical orders. See PSUF Facts 30-31, 33-50 and 60. As a result of their actions on November 11, 2018 at approximately 0400 hours the vision impaired plaintiff Fell in a non-handicapped cell (LA-33) without handrails that had an obstructed night light injuring his right Foot, right knee, left hip, back and right shoulder. See PSUF Facts 52-57. Plaintiff's back injury specifically required an increase [the dispensation of] prescription pain medication. See PSUF Fact 55. Under these Facts Defendants are liable to plaintiff for their deliberate indifference to plaintiff's serious medical needs and the resultant injury of plaintiff.

27

## Plaintiff had a Serious Medical Need:

26. A "serious medical need" is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctors attention. See Iko vs Shreve 535 F.3d 225, 241 (4th Cir 2008). Plaintiff's vision impairment was diagnosed by Doctor Berry, M.D. and Doctor Kelinski M.D. as strabismus with large angle alternating exotropia that causes diplopia (double vision) and the loss of all depth perception. See PSoF Facts 17-22 and 64. Doctor Berry, M.D. a specialist in opthalmology made recommendations for care and Dr Kelinski M.D. entered medical orders mandating treatment which included falls prevention and handicapped cell assignment orders. Id.

28

A medical need is serious if it imposes a life-long handicap or permanent loss. See, Monmouth County Correctional Institution Inmates vs. Lanzaro 834 F.2d 326, 317 (3d. Cir 1987); McBride vs Deer 240 F.3d 1287, 1290-91 (10th Cir. 2001). Plaintiff's vision impairment was so serious that the NC-DPS Division of Prisons ADA Coordinator assigned Plaintiff to ADA status and approved a digital audio book player for plaintiff from the State Library for the Blind and Physically Handicapped. See, PSoF Facts 24-25. Plaintiff's diagnosed vision impairment constituted a serious medical need.

Defendants are Not
Entitled to Qualified Immunity:

27. Defendants are not entitled to qualified immunity because in 2018 it was clearly established that intentional interference with treatment prescribed by

29

a doctor was unlawful. See Estelle vs. Gamble, 429 U.S. 97, 105, 97 S.ct. 285 (1976). Plaintiff's treatment was prescribed by a medical doctor. See, PSOF Fact 18-22, 33 and 34. Each of the named Defendants intentionally interferred with the prescribed Falls prevention order and handicapped cell assignment as a Falls prevention measure. See, PSOF Facts 29, 31-50 and 60. Thus, Defendants are not entitled to qualified immunity.

Defendants are liable to Plaintiff in their Individual Capacity For the violation of Plaintiff's Constitutional Rights:

28. Defendants were named in their individual capacity For the violation of Plaintiff's constitutional rights. See, Complaint doc. 1 at paragraph 7. Defendants' are properly named in their individual capacities For the violation

30

of plaintiff's constitutional rights. See,
Hafer vs Melo, 502 U.S. 21, 25,
(1991).

## Defendants are liable for Violating the Americans With Disabilities Act (ADA):

29. Plaintiff is a qualified individual
with a diagnosed disability/handicap
that substantially limits one or more
major life activities. See PSOF, Facts
16 - 26 and 70. Plaintiff has a
record of his diagnosed serious vision-
impairment and history of being regarded as
handicapped/disabled due to his vision
impairment. See PSOF, Facts 3 - 26,
~~and 6al~~ 33, 34 and 62. Medical
care and handicapped cell housing are
programs, benefits or services of the
NC-DPS which is a public entity.
See, PSOF, Fact 58 and 59. Each
of the Named Defendants denied or
excluded plaintiff from receiving medical

31

care prescribed by a doctor for his vision impairment when they refused plaintiff handicapped cell housing as falls prevention measure. See PSOF 31-50 and 60. Plaintiff has shown intentional discrimination or disparate treatment as during 2018 at AxcI other handicapped/disabled prisoners including, but not limited to, Hugh Locklear Sr. Duncan Ray Bynum and Arthur Goulette were provided reasonable accommodations of falls prevention measures and/or handicapped housing in relation to their disabilities as ordered by AxcI health care providers. See PSOF Fact 66. The disparate treatment of plaintiff was not related to any legitimate[6] penological interests. See PSOF, Fact 67.

---

[6] Defendants had handicapped cells that were vacant. See, PSOF Fact 32. They also housed non-handicapped prisoners in handicapped cells without a medical order to do so. Id. at 32

32

30. Plaintiff has demonstrated that 1) he has a disability; 2) he is otherwise qualified for the benefit(s) in question, and that; 3) he was excluded from participation in or denied the benefits of such service, based upon his disability. Constantine vs Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005); Baird vs Rose, 192 F.3d 462, 467-70 (4th Cir 1999) and; Doe vs. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995). Plaintiff has also proven that 1) he has a physical impairment; 2) that his impairment implicates at least one major life activity, and; 3) that the limitation is substantial. See Heiko vs. Colombo Sav. Bank F.S.B., 434 F.3d 249, 254 (4th Cir. 2006).

31. Thus, Defendants are liable to plaintiff for their violations of the Americans With Disabilities Act.

33

<u>Defendants are not entitled
to Eleventh Amendment Immunity:</u>

32. Defendants are named in their
official capacities For violations of the
Americans With Disabilities Act (ADA) and
the Rehabilitation Act (RA) of 1973. Because
of similar language in the ADA and RA
these acts are generally construed to
impose the same requirements. See
<u>Baird</u> at 468; <u>Doe</u>, at 1264-65.
The ADA and RA apply to state
prisons. See <u>Pennsylvania Dept. of
Corr. vs Yeskey</u>, 524 U.S. 206, 210
(1998); <u>Spencer vs Earley</u>, 278
F. Appx. 254, 259 (4th Cir 2008)
(unpublished). Compensatory damages
are available under the disability
statutes but not punitive damages.
See, <u>Barnes vs. Gorman</u>, 536 U.S.
181, 188-89 (2002).


33. The ADA provides that, "[a] state
shall not be immune under the eleventh

34

amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Chapter." See, 42 U.S.C. 12202. This provision clearly and unambiguously expresses congressional intent to abrogate the States' Eleventh Amendment immunity with respect to claims brought under the ADA. See Constantine at 484 (4th Cir 2005). The NC-DPS accepts Federal Funds. See PSOF Fact 58. Ongoing acceptance of Federal Funds waives the Eleventh Amendment defense to claims brought under the RA. See, Phiffer vs Columbia River Correctional Institution 384 F.3d 791 (9th Cir 2004) (per curiam); Garret vs University of Ala. at Birmingham Bd. of Trustees, 344 F.3d 1288, 1293 (11th Cir 2003).

34    Congress has also abrogated the States' eleventh amendment immunity for prisoners ADA damage claims that also involve actual violations of the

35

Constitution. See *U.S. vs. Georgia*, 546 U.S. 151, 155-60 (2006). In that case the Supreme Court specifically referred to Fourteenth Amendment rights. In fact, virtually all constitutional claims by state prisoners are Fourteenth Amendment claims in part, because the Fourteenth Amendment "incorporates" the Eighth Amendment's protection against cruel and unusual punishments and makes it applicable to the states, *Georgia*, 546 U.S. at 157 (citation omitted), and also incorporates the First, Fourth and Sixth Amendments. The Fourteenth Amendment's Equal Protection Clause applies directly to the States, so almost any constitutional claim a state prisoner might raise is also a Fourteenth Amendment claim. See also, *Georgia*, 563 U.S. at 162 (Stevens, J., concurring)(suggesting that the Courts holding should be extended generally to claims about the mistreatment of disabled prisoners, stating that "Courts

36

have also reviewed a myriad of other types of claims by disabled prisoners such as allegations of the abridgment of religious liberties, undue censorship, interference with access to the judicial process, and procedural due process violations.").

35. The Supreme Court has said that if conduct violates the ADA but not the Constitution, lower courts must decide "whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." (emphasis added) U.S. vs Georgia 546 U.S. at 159. Here Defendants' reliance on Chase and Belk are misplaced because in this case plaintiff has shown an actual violation of the Constitution, therefore, the congruence and proportionality test is inapplicable in this case. Thus Defendants are not entitled to Eleventh Amendment immunity in this case.

37

<u>Plaintiff has shown Retaliation:</u>

30. The vision impaired plaintiff personally complained to each Named Defendant, except Gamewell, that he was being denied medical care prescribed by a doctor and ADA reasonable accommodations. See, PSoF Fact 60. Defendants response was to refuse plaintiff handicapped housing as ordered by a medical doctor and to refuse to contact the officer-in-charge (OIC) to obtain handicapped housing. See, PSoF Facts 31-50 and 60. Although plaintiff has shown disparate treatment, See, PSoF Facts 66 and 67. Plaintiff does not have to show disparate treatment or disparate impact to establish a lack of reasonable accommodation. It is not a defense for defendants to say — as they seem to say here — that they don't discriminate against the disabled, but treat everybody badly. The ADA and RA require public entities to reasonably accommodate

38

disabilities regardless of whether they are treating people the same or differently. See _Henrietta D. vs. Bloomberg_, 331 F.3d 261, 276-77 (2d Cir. 2003). Plaintiff has shown 1) denial of specific constitutional right, 2) Defendants intent to retaliate for plaintiff's assertion of that right, 3) a retaliatory adverse act and; 4) causation. See, _Moore vs. Bennet_, 777 F.Supp. 2d 969, 982 (EDNC 2011).

## Plaintiff Exhausted his Administrative Remedies as Required By the PLRA:

37. Prior to initiating this civil action plaintiff exhausted his available administrative remedies within the NC-DPS Division of Prisons. See PSoF, Fact 69. The Grievance is filed in the record proper of this civil action as is the final grievance appeal decision demonstrating exhaustion. See document 1-1 at pages 1-6 and doc. 1-1 at page 6.

39

Conclusion:

For the foregoing reasons, Defendants dispositive motion (doc 80) should be denied in its entirety and this matter should be set for a jury trial.

Dated this 15 day of June 2021.

MATTHEW JAMES GRIFFIN
39704
P.O. Box 639
Las Cruces, NM 88004

Certificate of Service
Filed seperately.

40