UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19-cv-00049-MR

| | | |
|---|---|---|
| MATTHEW JAMES GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| FNU HOLLAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment [Doc. 80], Plaintiff's "Motion for Leave to File a Response in Expanse of the Page Limitation" [Doc. 88], and Plaintiff's "Second Motion for a 15 Day Extension of Time Within Which to File Responsive documents in Opposition to Summary Judgment" [Doc. 91].

## I.   PROCEDURAL BACKGROUND

Pro se Plaintiff Matthew James Griffin ("Plaintiff") is a vision-impaired inmate of the state of New Mexico currently incarcerated at the Penitentiary of New Mexico in Sante Fe, New Mexico. He filed this action on April 30, 2019, pursuant to 42 U.S.C. § 1983, asserting claims he alleges arose while he was incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina. [Doc. 1]. Plaintiff asserts that Defendants were deliberately

indifferent to his serious medical needs in violation of his Eighth Amendment rights and that they violated his rights under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973 ("Rehab Act") by refusing to transfer Plaintiff to a handicapped cell with handrails and an unobstructed nightlight. [Id.; see Doc. 10]. Plaintiff alleges that he was injured in a fall he suffered due to these violations. [Id. at ¶ 56]. He sues Defendants in their individual and official capacities. [Id. at 1]. Plaintiff filed various exhibits with his Complaint, including some Medical Duty Status records. [Doc. 1-1 at 4, 8, 10]. For relief, Plaintiff seeks monetary and injunctive relief, punitive damages, and the recovery of costs and fees, if any.[1] [Doc. 1 at 23].

On April 21, 2021, Defendants moved for summary judgment. [Doc. 80]. Defendants submitted only a memorandum in support of their motion and pointed to the factual and legal insufficiencies of Plaintiff's Complaint as grounds for summary judgment. [See id.]. Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted

---

[1] Because Plaintiff has been transferred to a different correctional facility, his claim for injunctive relief is moot and will be dismissed. See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007).

to the Court. [Doc. 82]. After seeking multiple extensions of time to respond[2] [Docs. 84, 88], Plaintiff filed a response in opposition to Defendants' summary judgment motion[3] [Doc. 89]. Plaintiff submitted a brief, a "Statement of Fact," his own Declaration, and various records, including his own medical records. [Docs. 89-1 to 89-31].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Instead, it "must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor." Matvia v. Bald Head Island Mgt., Inc., 259 F.3d 261, 266 (4th Cir. 2001).

---

[2] The Court will grant Plaintiff's second motion for additional time to respond to Defendants' motion for summary judgment [Doc. 91], which is pending before the Court now.

[3] Plaintiff also moved for leave to file a response exceeding the 25-page limit set forth in Local Civil Rule 7.1(d). [Doc. 88]. The Court will grant Plaintiff's motion for the reasons set forth therein.

"[T]here is no burden upon 'the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact.' Rather, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006) abrogated on other grounds by Wilkins v. Gaddy, 130 S.Ct. 1175 (2010) (per curiam) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)) (internal emphasis omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 322 n.3 (quoting Fed. R. Civ. Proc. 56(c)). The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. FACTUAL BACKGROUND

As noted, Defendants do not submit their own forecast of evidence in support of their summary judgment motion, but instead point to the factual and legal deficiencies of Plaintiff's sworn Complaint. Regardless, the relevant forecast of evidence in the light most favorable to Plaintiff is as follows.

Plaintiff is a handicapped prisoner of the State of New Mexico. [Doc. 1 at ¶ 29]. He has a vision impairment diagnosed as strabismus with large angle alternating exotropia. [Id. at ¶ 31]. In layman's terms, Plaintiff eyes alternately point outward to a significant degree. It is the opposite of crossed eyes. This impairment causes Plaintiff to experience double vision, uncontrolled eye movements (nystagmus), eye fatigue, and loss of all depth perception. [Id.]. Plaintiff's vision impairment substantially limits his ability to ambulate safely, read, work, drive, navigate uneven terrain, climb stairs, safely perform manual tasks involving eye-hand coordination, and see and

5

perceive his surroundings correctly. [Id. at ¶ 32]. Plaintiff is disabled within the meaning of the ADA and the Rehab Act. [Id. at ¶ 34].

Defendants Hollar, Massagee, Hensley, Walker, Delozier, Strohl, Mandeville, Copeland, Lowery, and Johnson were all prison officials at Alexander at the relevant times. [Doc. 89-3 at ¶¶ 53-54, 57, 58-59, 62-65]. Defendants Gamewell, Folly, Lail, Putt, Greene, and Eggleston were nurses at Alexander at the relevant times. [Id. at ¶¶ 36, 56, 60-61, 66-67].

On or about October 9, 2015, Plaintiff was transferred to the custody of the North Carolina Department of Public Safety (NCDPS) through the Interstate Corrections Compact (ICC) or the Western Interstate Corrections Compact (WICC). [Doc. 1 at ¶ 29; Doc. 89-3 at ¶ 16]. In December 2015, Plaintiff was transferred to Alexander and housed in an ADA-compliant cell consistent with the instructions of NCDPS healthcare providers. [Id. at ¶ 35; Doc. 89-3 at ¶ 22].

On March 26, 2018, Plaintiff was seen by Dr. Berry, an ophthalmologist, for Plaintiff's annual eye exam. [Doc. 89-17 at 2]. Dr. Berry noted that Plaintiff has "full visual fields," but no depth perception due to his exotropia. [Id. at 3]. Dr. Berry recommended that, for Plaintiff's safety, he be housed in a ground floor handicapped cell, be given a bottom bunk, and not have to use stairs. [Doc. 1 at ¶ 36; Doc. 89-17 at 3]. Dr. Berry also wrote

that Plaintiff would "benefit from a night light." [Id.; Doc. 89-17 at 3].

On June 12, 2018, Plaintiff was evaluated by Marta Kalinski, M.D., at Main Medical at Alexander to evaluate his special needs. [Id. at ¶ 37; Doc. 89-18 at 2]. Dr. Kalinski reported that Plaintiff requested to have a handicapped cell with handrails and a nightlight. Dr. Kalinski also noted that Plaintiff had an elevated risk of falls and other accidental body injury due to his eye condition and that, during a recent stay at Central Prison, Plaintiff was housed in a non-handicapped cell and suffered a right shoulder injury from a fall. [Doc. 89-18 at 2].

The record for this encounter also documents Plaintiff's history of recurrent bilateral shoulder dislocation and poorly controlled chronic pain syndrome related to a lower back injury and bilateral shoulder injury. [Id. at 3]. Dr. Kalinski recorded, "[d]ue to vision impairment, [Plaintiff] needs to have changes placed into Medical Duty Status including handicapped cell, no climbing, falls prevention, bottom bunk, no stairs, no work around hot or sharp objects, avoidance of uneven terrain, [and] no driving." [Id. at 2].

Plaintiff's Medical Duty Status was updated the next day. [See Doc 89-19 at 2]. It provided, among other things, that Plaintiff be subject to "falls prevention" and restricted to the bottom bunk and a handicapped cell. [Doc. 89-19]. A handicapped cell has an accessible toilet with rear and side grab

7

bars. [Doc. 89-24]. The Medical Duty Status also showed that Plaintiff "may have" a nightlight in his possession. [Doc. 89-19].

On August 15, 2018, Defendant Gamewell, a nurse at Alexander, documented a routine medication renewal for Plaintiff. [Doc. 89-27]. The renewal reflected Plaintiff's prescription for Gabapentin, which was for Plaintiff's shoulder, lower back, and right knee pain, as well as Plaintiff's sciatica. [Doc. 89-27]. Plaintiff was directed to take one 300 mg capsule three times daily. [Doc. 89-27].

On October 14, 2018, Defendant Gamewell updated Plaintiff's Medical Duty Status. [See Doc. 89-23 at 2]. This Medical Duty Status maintained the order for a bottom bunk, handicapped cell, and falls prevention, but did not include the authorization for Plaintiff to have a nightlight in his possession, even though Plaintiff was provided with a nightlight.[4] [Id. at 2; Doc. 89-3 at ¶ 41].

---

[4] While Plaintiff attests that Defendant Gamewell "deleted night light from the Medical Duty Status" [Doc. 89-3 at ¶ 36], there are no other medical records before the Court giving context to this change or otherwise explaining why Plaintiff's Medical Duty Status was updated at that time. Moreover, Plaintiff included only very select medical records in his forecast of evidence. As such, the forecast of evidence does not raise a substantial inference that Defendant Gamewell deleted the nightlight authorization, only that it was changed sometime between June 13, 2018 and October 14, 2018. Nonetheless, for the purpose of this motion, the Court will give the Plaintiff the benefit of a very generous inference and treat this as evidence of the fact Plaintiff asserts.

8

On November 8, 2018, Defendant Hollar transferred Plaintiff from a handicapped cell with handrails and a functioning nightlight in regular population to a non-handicapped cell with an obstructed nightlight in segregation. [Doc. 1 at ¶¶ 42, 44; Doc. 89-3 at ¶¶ 41, 53]. Plaintiff showed Defendant Hollar the June 13, 2018 and October 9, 2018 Medical Duty Status reports, which required a handicapped cell and falls prevention. [Id. at ¶ 43; Doc. 89-3 at ¶ 53]. Defendant Hollar refused to move Plaintiff to a handicapped cell, although at least two handicapped cells were being used by non-handicapped inmates and were, therefore, presumably available to Plaintiff. [Id. at ¶¶ 43, 45-46]. Defendant Hollar also refused to contact the Officer-in-Charge ("OIC"), who would have had the authority to immediately transfer Plaintiff to a handicapped cell. [Doc. 89-3 at ¶ 53; see Doc. 89-3 at ¶¶ 54-67].

Over the next three days, Plaintiff showed his Medical Duty Status reports to Defendants Massagee, Hensley, Walker, Delozier, Strohl, Mandeville, Copeland, Lowery, Folly, Lail, Putt, Greene, Eggleston, and Johnson, requesting a handicapped cell with an unobstructed nightlight and handrails. [Id. at ¶¶ 54-67]. Each Defendant refused Plaintiff's request and refused to contact the OIC. [Id.].

On November 11, 2018, at approximately 4:00 a.m., Plaintiff fell in the non-handicapped cell where he remained, injuring his right foot, right knee, left hip, back, and right shoulder. [Doc. 1 at ¶ 56]. Plaintiff alleges that the fall was caused by the lack of handrails and unobstructed nightlight. [Id. at ¶ 64]. He sought medical treatment for his injuries. [See id. at ¶ 57; Doc. 89-3 at ¶¶ 71-72]. Plaintiff, however, has neither alleged nor forecast evidence regarding the circumstances of the fall or any specific injury he suffered to his foot, knee, hip, back, or shoulder.

On December 3, 2018, Defendant Gamewell documented another routine medication renewal for Plaintiff. [Doc. 89-28]. The renewal reflected Plaintiff's prescription for Gabapentin, which had been increased from 300 mg three times per day to 600 mg three time per day since the previous medication renewal in the record. [Id.; see Doc. 89-3 at ¶¶ 73-74]. Other than this temporally correlated increase in dosage of Plaintiff's pain medication, there is no forecast of evidence of any treatment received by Plaintiff for his alleged fall-related injuries.

On May 3, 2019, Plaintiff was transferred to Warren Correctional Institution in Manson, North Carolina. [Doc. 89-29]. Plaintiff's medical transfer summary reflects Plaintiff's bottom bunk, handicapped cell restriction, but there is no authorization for Plaintiff to possess a nightlight.

[Doc. 89-29]. Plaintiff has since been transferred back to New Mexico and remains incarcerated there.

## IV. DISCUSSION

Defendants argue that sovereign immunity bars Plaintiff's official capacity claims, Defendants were not deliberately indifferent to Plaintiff's serious medical needs, Defendants have qualified immunity from Plaintiff's Eighth Amendment individual capacity claims, and Plaintiff's ADA and Rehab Act claims against Defendants in their individual capacities fail as a matter of law. [Doc. 81].

### A. Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendants are entitled to summary judgment on Plaintiff's official capacity claims against them.

**B.    Deliberate Indifference**

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's

actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). A prison official, however, is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Farmer, 511 U.S. at 837.

Plaintiff has not raised a genuine issue for trial here. The forecast of evidence, construed in Plaintiff's favor, shows that Defendant Gamewell removed the authorization for Plaintiff to have a nightlight in his possession. The forecast of evidence also shows that Plaintiff showed the other Defendants his Medical Duty Status, which restricted him to a handicapped

cell with falls prevention, and that they refused to transfer Plaintiff to a handicapped cell or to contact the OIC to effect such transfer.

Under this forecast of evidence, Plaintiff has failed to establish that Defendants had the requisite state of mind to establish "deliberate indifference" under the law. Deliberate indifference describes a state of mind more blameworthy than negligence, requiring (1) that a defendant have been personally aware of facts from which the inference could be drawn that Plaintiff would suffer a substantial risk of serious harm; and (2) that the defendant had actually drawn the inference and recognized the existence of such a risk. Farmer, 511 U.S. at 837. Further, a prison official is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Id. at 837.

As to Defendant Gamewell, the forecast of evidence shows, at best, that she removed the nightlight authorization. However, the forecast of evidence does not show that a nightlight was ever even ordered for Plaintiff in the first place, only that he would benefit from one. There is, therefore, no forecast of evidence of an excessive risk known by Defendant Gamewell in removing the authorization, let alone that she consciously or intentionally disregarded such risk. The forecast of evidence is decidedly insufficient to go to a jury against Defendant Gamewell. Moreover, Plaintiff admits that he

was provided a nightlight. When he was moved to a segregation unit, Plaintiff was still provided a nightlight, albeit an obstructed one. Plaintiff presents no forecast of evidence as to how the obstruction of the nightlight made any difference.

The forecast of evidence in this case also fails to satisfy these elements as to the other Defendants' state of mind. At best for Plaintiff, the forecast of evidence shows that Plaintiff's Medical Duty Status restricted him to a handicapped cell with falls prevention and that Plaintiff flagged down every prison official and nurse he encountered and showed them his Medical Duty Status and asked that he be transferred to a handicapped cell. Even assuming facts existed from which one might infer a substantial risk of serious harm to Plaintiff by housing him in a non-handicapped cell, no reasonable jury could find from the forecast of evidence here that any Defendant actually drew such an inference and recognized that risk. While Defendants may very well have been negligent in their refusal to act, no reasonable jury could find that these Defendants were deliberately indifferent under the Eighth Amendment. See Farmer, 511 U.S. at 837.

As such, Plaintiff has failed to raise a genuine issue of material fact for trial against any Defendant on this claim. Summary judgment is, therefore, appropriate.

## C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because Plaintiff has not forecasted evidence that Defendants violated a constitutional right in the first place, Defendants are also entitled qualified immunity on Plaintiff's individual capacity claims. The Court, therefore, grants summary judgment for Defendants on this ground as well.

### D. ADA and Rehab Act

Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. To establish a prima facie case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Miller v. Hinton, 288 Fed. App'x 901, 902 (4th Cir. 2008) (citations omitted). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). The duty of reasonable accommodation, however, must also take into account whether the institution's actions are related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987); Tanney v. Boles, 400 F.Supp.2d 1027, 1050 (E.D. Mich. 2005) (noting that courts have applied Turner to ADA and Rehab Act claims).

The Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of [his] disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination

17

under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The analysis under the Rehab Act is generally the same as under the ADA. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 214 (4th Cir. 2002). Claims under the Rehab Act, however, require a showing of discrimination "solely by reason of" disability, 29 U.S.C. § 794(a), while under the ADA, a plaintiff must only show discrimination "by reason of" disability, 42 U.S.C. § 12132. As such, the causation standards are "significantly dissimilar." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n.17 (4th Cir. 2005) (citation omitted). In addition, to sustain a claim under the Rehab Act, a plaintiff must also show that the program or activity in question receives federal financial assistance. Thomas v. The Salvation Army Southern Territory, 841 F.3d 632, 641 (4th Cir. 2016).

Neither the Rehab Act nor Title II of the ADA, however, provide for individual capacity suits against state officials. See Barnes v. Young, 565 Fed. App'x 272, 273 (4th Cir. 2014) (unpublished) (quoting Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases)); see Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (there is no ADA retaliation claim against defendants in their individual capacities); Moneyhan v. Keller, 563 Fed. App'x 256, 258 (4th Cir. 2014) ("Neither the ADA nor the Rehabilitation Act authorizes suits for monetary damages

18

against Defendants in their individual capacities.") (citation omitted). Such a suit, therefore, may only be brought against a defendant in an official capacity. Id.

Plaintiff's forecast of evidence regarding this claim fails on many grounds. As addressed supra, Plaintiff presents no forecast as to how the obstructed nightlight was an insufficient accommodation. Likewise, Plaintiff has presented no forecast as to how the lighting or lack of other handicapped amenities caused any injury. In fact, Plaintiff presents no forecast whatsoever as to how his fall occurred or how there is any connection between the facilities and the fall. Moreover, other than a vague, unsupported claim of injury to his right foot, right knee, left hip, back, and right shoulder, Plaintiff presents no forecast of injury or any treatment he received for such injuries. He merely states that the dosage of his pain medication was increased a month after his fall. This is insufficient to raise an inference of a connection between the two.

In addition, the placement of Plaintiff in a non-handicapped cell arose from Plaintiff being transferred to a segregation unit. Plaintiff presents no evidence, in fact Plaintiff makes no claim, that his placement in segregation was unwarranted. As such, Plaintiff's transfer fulfilled a legitimate penological interest. Plaintiff has forecast no evidence to overcome this

19

hurdle. Plaintiff's claims under the ADA and the Rehab Act, therefore, fail as a matter of law. The Court, therefore, will grant Defendants' motion for summary judgment as to these claims.

## V. CONCLUSION

In sum, for the reasons stated herein, the Court grants summary judgment for all Defendants.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 80] is **GRANTED** and this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's motions [Docs. 88, 91] are **GRANTED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: March 10, 2022

*[Signature]*

Martin Reidinger
Chief United States District Judge